UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
======================================================

MARY CLOSURE, individually and as Parent
and Natural Guardian of unlisted minors, MARLA MOULTRIE,
individually and as Parent and Natural Guardian of unlisted
minors, YVONNE OXENDINE, individually and as Parent and
Natural Guardian of unlisted minor, and CRYSTAL ERVIN,
individually and as Parent and Natural Guardian of unlisted minors,

                            Plaintiffs,

v.                                                                                 5:06- CV - 926
                                                                                (NPM /GJD)

ONONDAGA COUNTY, ONONDAGA COUNTY SHERIFF'S
DEPARTMENT, THE CITY OF SYRACUSE, THE CITY OF
SYRACUSE POLICE DEPARTMENT, KEVIN WALSH, as
SHERIFF OF ONONDAGA COUNTY, JAMES RENNA, individually
and in his capacity as a POLICE OFFICER, F. LAMBERTSON,
individually and as an officer of the SYRACUSE POLICE
DEPARTMENT, J. ZACKUS, individually and as an OFFICER
OF THE SYRACUSE POLICE DEPARTMENT, KEVIN MURPHY,
individually and as a SERGEANT in the ONONDAGA SHERIFF'S
OFFICE, F. MENDOLIA, individually and as a DEPUTY of the
ONONDAGA COUNTY SHERIFF'S DEPARTMENT, and M. SACCO,
individually and as an INVESTIGATOR in the ONONDAGA COUNTY
SHERIFF'S DEPARTMENT,

                            Defendants.

======================================================

APPEARANCES                                           OF COUNSEL

MEGGESTO, CROSSETT LAW FIRM        JOHN A. SICKINGER, ESQ.
Attorney for Plaintiffs
313 East Willow Street, Suite 201
Syracuse, NY 13203

| | |
|---|---|
| ONONDAGA COUNTY ATTORNEY'S OFFICE | JOHN W. SHARON, ESQ. |
| Attorney for Onondaga County Defendants | |
| 421 Montgomery Street, 10th Floor | |
| Syracuse, NY 13202 | |
| | |
| OFFICE OF JAMES P. McGINTY | JAMES P. McGINTY, ESQ. |
| Attorney for City of Syracuse Defendants | |
| 217 Montgomery Street, Suite 1200 | |
| Syracuse, NY 13202-1925 | |

NEAL P. McCURN, Senior U.S. District Court Judge

MEMORANDUM-DECISION AND ORDER

Plaintiffs Mary Closure ("Closure"), Marla Moultrie ("Moultrie"), Yvonne Oxendine ("Oxendine"), and Crystal Ervin ("Ervin"), individually and as parents and natural guardians of unlisted minor(s) (collectively "plaintiffs"), bring this civil rights action against the City of Syracuse ("City"), the City of Syracuse Police Department, Chief Gary Miguel ("Miguel"), Officer James Renna ("Renna"), Officer F. Lambertson ("Lambertson"), and Officer J. Zackus ("Zackus") (collectively, the "City Defendants"); Onondaga County ("County"), Onondaga County Sheriff's Department, Sheriff Kevin Walsh ("Walsh"), Sergeant Kevin Murphy ("Murphy"), Deputy F. Mendolia ("Mendolia"), and Investigator M. Sacco ("Sacco") (collectively, the "County Defendants"), pursuant to 42 U.S.C.A. § 1983. Plaintiffs seek redress for alleged violations of the civil rights secured to them by the Fourth, Sixth, and

2

Fourteenth Amendments to the United States Constitution in the form of general damages, punitive damages, and legal costs and expenses, including reasonable attorneys' fees.  Specifically, the complaint alleges illegal search and seizure; negligent and wrongful execution of a search warrant; negligent training and supervision of defendant police officers; common law torts of assault, battery, false arrest, and false imprisonment; and negligent and intentional infliction of emotional distress.  The court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1331 and 1343(a)(3).

Currently before the court is the City Defendants' motion to dismiss the complaint (Doc. No. 7, the "City Motion") for insufficiency of service of process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), or in the alternative, to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted.  Also pending is the County Defendants' motion to dismiss the complaint (Doc. No. 13, the "County Motion") pursuant to Fed.R.Civ.P. Rule 12(b)(6).  For the reasons set forth below, the defendants' motions will be granted.

**I.    Background**

The following facts are taken from the record of the case, and are presumed to be true for the purpose of these motions to dismiss.  At approximately 6:00 a.m. on the

morning of August 2, 2005, defendants Renna, Mendolia, Sacco, Lambertson and Zackus entered plaintiffs' residence at 336 Primrose Avenue, Syracuse, New York on a valid "no knock" search/arrest warrant meant for 338 Primrose Avenue, for the purpose of arresting Joseph L. Derby, Jr.  These named defendants restrained the occupants of the residence while they searched the home.  Within minutes of entering the residence, defendant police officers realized that they were in the wrong house, whereupon they left the residence at 336 Primrose Avenue and proceeded to 338 Primrose Avenue, where they took Mr. Derby into custody.  The court takes judicial notice of the fact that the warrant, submitted under seal, was facially valid.

**II.     Discussion**

    **A.     Service of Process**

As a threshold matter, the City Defendants move to dismiss the complaint against Officers Renna, Lambertson, and Zackus pursuant to Rule 12(b)(5) as service upon them was allegedly insufficient.  "Service of process ... is properly regarded as a matter discrete from a court's jurisdiction to adjudicate a controversy of a particular kind, or against a particular individual or entity ... Instead, the core function of service is to supply notice of the pendency of a legal action, in a manner and time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." Henderson v. U.S., 517 U.S. 654, 671-72, 116 S.Ct. 1638 (1996).  "When

a defendant raises a Rule 12(b)(5) challenge to the sufficiency of process, the plaintiff bears the burden of proving its adequacy." Chesney v. Valley Stream Union Free School Dist. No. 24, Slip Copy, 2006 WL 2713934 * 3 (E.D.N.Y.2006) (citing Preston v. New York, 223 F. Supp.2d 452, 466 (S.D.N.Y. 2002).

Service upon individuals within a judicial district of the United States is governed by Fed.R.Civ.P. Rule 4(e) which states that

> Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:
>
> (1) pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the state; or
>
> (2) by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. Rule 4(e) (West 2007).

The relevant New York State statute for service of process is McKinney's C.P.L.R. § 308. Subsection 2 of § 308, in pertinent part, provides for service of process

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business ....

McKinney's C.P.L.R. § 308(2) (West 2007).

In the instant case, service was made on Officers Renna, Lambertson, and Zackus by serving their copies of the summons and complaint on Captain Bruce Jenkins at the Syracuse Police Department headquarters. Plaintiffs' counsel asserts that this was done pursuant to an agreement with Corporation Counsel McGinty, and as a courtesy to these defendants as they are undercover police officers. Cognizant of possible repercussions against the officers, plaintiffs' counsel was reluctant to make their home addresses known via the filing of the affidavit of service with their home addresses listed. Thus, the summons and complaint were not mailed to these defendants. However, upon receipt of the motion to dismiss for insufficient service of process by the City Defendants, plaintiffs have re-served Officers Renna, Lambertson, and Zackus by personally delivering a copy of the summons and complaint to the officers' usual place of business and by mailing a copy of the summons and complaint to the officers' usual place of business.

As stated supra, the core function of service is to supply notice of the pendency

of a legal action, in a manner and time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections. In addition, plaintiffs' counsel asserts, and the City Defendants' counsel has not denied, that an agreement was in place to dispense of the mailing to protect the officers' anonymity. The court finds that the initial service on Officers Renna, Lambertson, and Zackus, coupled with the agreement between the parties' counsel, was sufficient to place them on notice of the allegations against them. In addition, the plaintiffs again served Officers Renna, Lambertson, and Zackus at their place of business and followed up by mailing a copy of the summons and complaint to their usual place of business. Accordingly, the City Defendants' motion to dismiss on the basis of insufficient service of process is unpersuasive to the court. However, the motion to dismiss will be granted for alternative reasons which are set forth below.

The City Defendants also move to dismiss the City of Syracuse Police Department from this action because it has no legal capacity to sue or be sued; to dismiss the complaint because it fails to identify the federal rights plaintiffs are attempting to vindicate and fails to sufficiently plead § 1983 causes of action against the City and the defendant officers; and to dismiss the defendant officers from this action because they are entitled to qualified immunity. As these issues are duplicative of those of the County Defendants, they will be addressed below.

The County Defendants move to dismiss on the following grounds: (1) the Onondaga Sheriff's Department is not a legal entity subject to suit; (2) the GVTF team that entered 336 Primrose Avenue was under no obligation to "knock and announce" their presence; (3) the facts alleged do not rise to the level of a § 1983 constitutional tort; (4) Mendolia, Sacco and Murphy are entitled to qualified immunity; (5) the complaint fails to allege municipal liability; (6) the claims asserted against Walsh and Murphy should be dismissed for lack of personal involvement; (7) the § 1983 claims of Moultrie and Ervin should be dismissed due to lack of standing; (8) police officers, as public officials, are entitled to qualified immunity; and (9) the claim for intentional infliction of emotional distress should be dismissed because the conduct alleged falls within the ambit of traditional tort liability.

**B.    42 U.S.C.A. § 1983 Generally**

In order to prevail on a claim under 42 U.S.C.A. § 1983, a plaintiff must establish the violation of a right secured by the Constitution and laws of the United States, and that the violation was committed by a person acting under color of state law. Section 1983 states in pertinent part that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

8

> liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable....

42 U.S.C.A. § 1983 (West 2007).

In the case at bar, it is undisputed that the defendants were acting under the color of state law.

### B.   Motion to Dismiss

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the court must accept as true the well pleaded allegations of the complaint. Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In addition, the allegations of the complaint should be construed favorably to the pleader. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct 1683, 40 L.Ed.2d 90 (1973). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The court is normally confined to consider only the complaint and "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits" on a 12(b)(6) motion. <u>Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effects, which renders the document integral to the complaint." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002).  "When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone, or convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." <u>Friedl v. City of New York</u>, 210 F.3d 79, 83 (2d Cir. 2000) (internal citations and quotations omitted).  "Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint [,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." <u>Cortec Industries, Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 48 (2d Cir. 1991).

In the case at bar, the County Defendants have filed additional materials under seal, including, <u>inter alia</u>, the search warrant and the transcript of a hearing held before

10

the State Supreme Court on May 18, 2006. In their complaint, the plaintiffs refer to, and the court subsequently relies on, testimony from the State Supreme Court action. The plaintiffs also make reference to the search warrant in the complaint. The court deems these documents incorporated by reference into the complaint, and finds no need to convert the motion to one for summary judgment.

### C. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability," and if the case is erroneously allowed to go to trial, the privilege is lost. Id. at 200-01 (internal quotations omitted). "If the law did not put the officer on notice that his conduct

would be clearly unlawful, ... [dismissal] based on qualified immunity is appropriate." Id. at 202.

"A defendant official is entitled to qualified immunity if (1) the defendant's actions did not violate clearly established law, or (2) it was objectively reasonable for the defendant to believe that his actions did not violate such law." Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001). "An officer's actions are objectively reasonable if officers of reasonable competence could disagree on the legality of the defendant's actions." Id. (internal quotations omitted).

The threshold issue in an action such as this, where officers mistakenly executed a no-knock search warrant on the wrong residence, is whether the officers immediately withdrew upon the realization that they were in the wrong home. In Maryland v. Garrison, 480 U.S. 79, 87, 107 S. Ct. 1013 (1987), the Court held that "the officers ... were required to discontinue the search of respondent's apartment as soon as they ... were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant ... While the purposes justifying a police search strictly limit the permissible extent of the search, the Court has also recognized the need to allow for some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." Id. "[A]s a legal matter, any search or seizure that occurred while the officers were under

the mistaken but reasonable belief that they were in fact executing the warrant at the correct residence would be protected by qualified immunity.  Conversely, any search or seizure that took place after the officers knew or reasonably should have known that they were in the wrong residence would no longer be protected by qualified immunity." Pray v. City of Sandusky, 49 F.3d 1154, 1159 (6th Cir. 1995).

In Simmons v. City of Paris, Texas, 378 F.3d 476 (5th Cir. 2004), a family filed a § 1983 suit against law enforcement officers and the City of Paris, Texas, for entering their home instead of the warrant's target home, and for detaining the parents and children within said home.  The district court in that action found a factual dispute as to how long the officers remained in the wrong house and whether the officers continued searching the house after they knew it was the wrong residence. Id. at 477. The Fifth Circuit affirmed the district court's decision in finding that the officers were entitled to qualified immunity for their mistaken entry into the wrong house, and affirmed the district court's denial of summary judgment on the plaintiffs' claims arising from the defendants' failure to immediately terminate their search when the defendants realized they were in the wrong house.[1]  The defendants claimed they left the plaintiffs' house immediately upon realizing they'd entered the wrong house; the plaintiffs claimed that the officers remained in the house for an additional five to six

---

[1] The 5th Circuit reversed the denial of summary judgment pertaining to officers who did not enter the residence. Simmons, 378 F.3d at 481-82.

minutes, and even though they knew they were in the wrong house, the defendant officers searched the adults' bedroom. The Fifth Circuit held that this discrepancy was an issue of material fact, and accordingly, an issue to be decided by a jury. Id. at 481.

In the case at bar, the complaint states in pertinent part that "[a]fter about fifteen minutes of being frightened by the Defendant Police Officers and Sheriff's Deputies, the Plaintiff's [sic] were told [by the officers] that the wrong residence had been entered. The Defendant Police Officers and Sheriff's Deputies then left without any further explanation or apology." (Complaint at ¶ 25). In the City Defendants' motion to dismiss, they state that "within minutes after entering however they discovered their mistake and, with apologies, withdrew." (Doc. No. 7 at p. 2). In the County Defendants' motion to dismiss, they state that "in attempting to execute this valid on its face warrant [for 338 Primrose Avenue] ... in the early morning hours of August 2, 2005, members of a GVTF [Gang Violence Task Force] Team mistakenly entered an adjacent residence at 336 Primrose Avenue. Once the GVTF team members realized this mistake, they immediately proceeded next door to 338 Primrose Avenue ...." (Doc. No. 13 at p. 3). At a hearing before Justice Karalunas of the New York State Supreme Court held on May 18, 2006, plaintiff Closure testified that upon realizing that they were in the wrong house, defendant police officers "all just ran downstairs" and left the residence. (Doc. No. 170, Tr. at 9:22 - 10:2). Plaintiff Oxendine testified

14

that upon the officers' realization that they were in the wrong residence, the officers allowed her to go downstairs with her children and then "they had to find the person who handcuffed" her daughter, to remove the handcuffs. The officers then "went over there [338 Primrose Avenue] and did whatever they needed to do."[2] The plaintiffs do not claim that any wrongdoing took place after the police officers realized they were in the wrong residence.

Initially, the court finds that the claims in the complaint as they pertain to the defendants Miguel, Walsh and Murphy, who did not enter the plaintiffs' residence on August 2, 2005, are hereby dismissed, as said officers obviously cannot be held liable for unreasonably remaining in the plaintiffs' residence. Accordingly, the complaint is dismissed on these grounds against Chief Miguel, Sheriff Walsh, and Sergeant Murphy.

The court also finds that the remaining defendant police officers who mistakenly entered the plaintiffs' residence on the morning of August 2, 2005, are protected by qualified immunity. See, supra, Pray v. City of Sandusky, 49 F.3d at 1159. ("[T]he initial mistake in entering the ... home was a reasonable one under the circumstances, and therefore, protected by qualified immunity"). In addition, this

---

[2] Oxendine stated that "All of them didn't leave," but she didn't elaborate on the statement, or assert any wrongdoing by the officers, if any, who remained. (Doc. No. 170, Tr. at 32:4).

court finds that the plaintiffs fail to state a claim against the officers in question because there is no allegation that those officers unreasonably remained in the plaintiffs' residence after they realized their mistake.  Although it is clear that the qualified immunity defense cannot be sustained as a matter of law in the presence of evidence that police officers continued to search a residence after realizing they were in the wrong home, Id. at 1160, no such allegation has been made in the case at bar.

Accordingly, the Court finds that the defendant officers who executed a valid no knock search/arrest warrant had an objectively reasonable belief that they were acting in a manner that did not violate the rights of the occupants of the residence which was mistakenly entered.  Upon realizing that they were in the wrong residence, the officers promptly departed the residence and went to the adjacent home where they made their arrest.  Thus, the individual police officers who entered the plaintiffs' residence on August 2, 2005, pursuant to a valid no knock search/arrest warrant are entitled to qualified immunity with respect to § 1983 and the tort claims asserted by the plaintiffs.

### D.     Municipal Liability

Municipalities may be held liable under § 1983 "only when a constitutional deprivation is inflicted pursuant to a government's policy or custom.  To set forth a cognizable claim for municipal liability in such an action, a plaintiff must plead and

prove (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Rivera v. City of Yonkers, -- F.Supp.2d –, 2007 WL 143033 *5 (S.D.N.Y. 2007) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Batista v. Rodriguez, 702 F.2d 393 (2d Cir. 1983) (internal quotations and citations omitted).  In the instant case, the plaintiffs assert that "Onondaga County's policy of failing to require its Sheriff's/Deputy's [sic] to check the address on a home before executing a search warrant is a custom practice and policy which is the cause of the constitutional violations suffered by the Plaintiffs at the hands of the Defendants." (Doc. No. 25).  Although this court must construe the allegations in the complaint favorably to the pleader, it appears beyond doubt to this court that the plaintiffs cannot prove that this is a legitimate County policy or custom.  The plaintiffs make no allegations of a City policy or custom that caused the plaintiffs to be subjected to a denial of their constitutional rights.  Therefore, the court will dismiss the complaint as against the municipal defendants pursuant to the requirements set forth in Monell.  With this determination, along with the dismissal of the claims in the complaint against Miguel, Walsh and Murphy, and the finding of qualified immunity for the individual officers who mistakenly entered the plaintiffs' residence, the court need not address the other issues in the City and County Defendants' motions, and hereby dismisses the complaint in its entirety.

## III. Conclusion

For the reasons set forth above, the court finds that

(1) the City Defendants' motion to dismiss (Doc. No. 7) is hereby GRANTED; and (2) the County Defendants' motion to dismiss (Doc. No. 13) is hereby GRANTED. The clerk is instructed to close this case.

SO ORDERED.

February 7, 2007

_____
Neal P. McCurn
Senior U.S. District Judge